# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

**Evelyn Rivera**

     v.

Case No. 21-cv-221-PB
Opinion No. 2023 DNH 102

**Jimmy Ducharme et al.**

## MEMORANDUM AND ORDER

This case stems from a dispute between two neighbors over the location of the boundary line between their properties. Plaintiff Evelyn Rivera asserts that defendant Jimmy Ducharme is liable under state law for trespass, nuisance, and negligence. She also charges that Ducharme violated the Federal Fair Housing Act, 42 U.S.C. § 3617. Ducharme has counterclaimed for trespass, ejectment, conversion, and unjust enrichment. Ducharme has filed a motion for summary judgment challenging Rivera's claims. For the following reasons, I grant the motion in part and deny it in part.

## I.    BACKGROUND

Ducharme is the beneficial owner of real property located at 32 ½-36 Summer Street in Nashua, New Hampshire ("Ducharme property"). He operates his construction business from that location. Rivera owns the neighboring lot at 32 Summer Street ("Rivera property"). A two-family

residence is located on the Rivera property. The disputed boundary line runs between the two properties along the side of the two-family residence.

Ducharme and Rivera purchased their lots from Shane Tumpney, with Ducharme purchasing his lot first. When Tumpney owned both properties, he rented the Rivera property and allowed his tenants to park along the side of the building. A stairway leading into the residence on the Rivera property also protruded from the side of the building into the area between the two properties.

When Ducharme decided to purchase the property, he commissioned Meisner Brem Corporation ("MBC"), a licensed land surveyor, to survey his lot and prepare a subdivision plan. That plan depicts the boundary line between the Rivera property and the Ducharme property as being a mere 0.9 feet from the Rivera building at its narrowest point. It also suggests that the building's side stairway encroaches on the Ducharme property by 3.5 feet. The plan states that the boundary lines were drawn using deed references for the Ducharme property.

Before Rivera purchased the neighboring lot, Ducharme used the MBC plan to persuade Tumpney to allow him to tear the side stairway down because it encroached on his property.[1] Tumpney and Ducharme, however,

---

[1]     The stairway remains in place notwithstanding this alleged agreement.

agreed that Tumpney's tenants could continue to park along the side of the building in exchange for Tumpney providing snow clearing and landscaping services to Ducharme's properties. Both Tumpney and Ducharme understood that this was an informal agreement that either side could revoke at any time.

Around this time, one of Ducharme's neighbors sent a letter to the City of Nashua alleging inaccuracies in the MBC subdivision plan. Ducharme later commissioned Maynard & Paquette Engineering Associates, LLC ("M&P") to prepare a new subdivision plan. The M&P plan differs from the MBC plan in certain respects. Most notably, the frontage for the Ducharme property on Summer Street is depicted as approximately two feet shorter in the M&P plan. According to the M&P plan, the boundary line between the Ducharme property and the Rivera property also appears to be somewhat farther away from Rivera's house, but the plan does not specify the distance between the house and the boundary line. Unlike the MBC plan, the M&P plan does not state that it was based on the boundary description in the Ducharme deed. Critically, neither the M&P plan nor any other evidence in the record suggests that the boundary line between the two properties is far enough from the Rivera property to allow her to park along the side of the building.

When Tumpney began to consider selling the lot that Rivera purchased, he asked Ducharme to grant him a permanent parking easement for the area along the side of the building. Ducharme declined. As a result, when Tumpney put the property on the market, the listing sheet disclosed that the only available parking was on the street.

Rivera purchased her property in October 2020. Both the realtor and Tumpney told her that the listing sheet was wrong and that there was parking along the side of the building. Rivera parked her car there the first time she went to the property after closing. Ducharme, however, immediately approached her and told her move her car because it was on his property. Rivera declined. A few weeks later, Rivera paved a ten-foot-wide strip in the disputed parking area without consulting Ducharme, despite his continued insistence that she had no right to park on his property. Rivera and her adult sons also continued to park their vehicles in that area. Frequent clashes with Ducharme about the location of the boundary line ensued.

Although it was Rivera's intention to move to the property when she purchased it from Tumpney, Ducharme's hostility caused her to keep her primary residence in New York. Her two sons moved into one apartment at the Rivera property, and she rented the other unit to the same tenants who had occupied it while Tumpney was the owner. On one occasion when Rivera was visiting her sons, Ducharme, who is white, called Rivera, who is of

Puerto Rican decent, a "spic" to her face. Rivera testified in her deposition that Ducharme used the same slur multiple times in confrontations with her sons.[2] Ducharme also once plowed snow directly onto Rivera's car while it was parked in the disputed driveway.

Approximately a month after Rivera purchased her property, she came to the house to find that Ducharme had parked a Bobcat VersaHandler machine alongside the paved strip of the disputed driveway. Rivera observed the "huge" piece of construction equipment upon arrival, but she nonetheless decided to pull in and park in the "narrow" spot between her house and the VersaHandler, with the driver's side door next to her house. Doc. 25-8 at 10. Rivera then got out of the car, walked around the back, and opened the passenger side rear door to retrieve some bags. When Rivera went to close the door, she lost her balance, twisted her knee, and fell backward onto the VersaHandler. She suffered serious injuries to her knee as a result of the fall.

---

[2]     It appears that Rivera's testimony concerning what her sons had told her about their interactions with Ducharme would be inadmissible hearsay. Because the defendants do not object to Rivera's statements on hearsay grounds, however, I assume for purposes of this motion that they are of evidentiary quality, because her sons presumably could testify as to their interactions with Ducharme.

The complaint asserts four state law claims and one federal claim against Ducharme[3]: (1) trespass, because Ducharme parked the VersaHandler on what she claims is her property (Count IV); (2) nuisance, based on his allegedly illegal storage of construction equipment (the VersaHandler) in a residential area (Count V); (3) negligence, premised on Ducharme's decision to park the VersaHandler next to Rivera's parking spot (Count II); (4) intentional infliction of emotional distress (Count III); and (5) violation of § 3617 of the federal Fair Housing Act (FHA) by interfering with Rivera's enjoyment of her property (Count I). Ducharme filed counterclaims for trespass, ejectment, conversion, and unjust enrichment. He also seeks a declaratory judgment that he is the owner of the disputed driveway, and that Rivera has no ownership interest in it.

In October 2021, I granted Ducharme's motion for a preliminary injunction prohibiting Rivera from parking cars or allowing others to park cars in the disputed driveway because Ducharme was likely to succeed on his trespass claim. In making that finding, I principally relied on an affidavit submitted by Ducharme from Gregg Jeffrey, a licensed land surveyor. Jeffrey stated that he had staked the lot lines based on MBC's boundary information

---

[3]     Rivera has sued both Ducharme and his business, Ducharme Construction Management, LLC. When I discuss Rivera's claims against Ducharme in this Memorandum and Order, I am referring to her claims against both defendants.

and proposed subdivision plan. According to Jeffrey, the resulting boundary markers showed that the boundary line, which runs diagonally along the side of Rivera's house, is between 0.9 and 1.6 feet away from Rivera's house. Rivera pointed to largely immaterial discrepancies between the MBC plan which Jeffrey relied on and the M&P plan but she has not produced any evidence to support her contention that any portion of the disputed driveway is on her property.

Ducharme has filed a motion for summary judgment challenging all of Rivera's claims. Rivera does not object to the dismissal of her intentional infliction of emotional distress claim but otherwise opposes Ducharme's motion.

## II.   <u>STANDARD OF REVIEW</u>

Summary judgment is warranted when the record shows "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Tang v. Citizens Bank, N.A., 821 F.3d 206, 215 (1st Cir. 2016). A "material fact" has the "potential to affect the outcome of the suit." Cherkaoui v. City of Quincy, 877 F.3d 14, 23 (1st Cir. 2017) (quoting Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)). A "genuine dispute" exists if a factfinder could resolve the disputed fact in the nonmovant's favor. Ellis v. Fid. Mgmt. Tr. Co., 883 F.3d 1, 7 (1st Cir. 2018).

The movant bears the initial burden of presenting evidence that "it believes demonstrates the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); accord Irobe v. U.S. Dep't of Agric., 890 F.3d 371, 377 (1st Cir. 2018). Once the movant has properly presented such evidence, the burden shifts to the nonmovant to designate "specific facts showing that there is a genuine issue for trial," Celotex, 477 U.S. at 324, and to "demonstrate that a trier of fact could reasonably resolve that issue in [its] favor." Irobe, 890 F.3d at 377 (cleaned up). If the nonmovant fails to adduce such evidence, the motion must be granted. Celotex, 477 U.S. at 324. In considering the evidence, I must draw all reasonable inferences in the nonmoving party's favor. Theriault v. Genesis HealthCare LLC, 890 F.3d 342, 348 (1st Cir. 2018).

## III.   ANALYSIS

Ducharme argues that he is entitled to summary judgment on Rivera's trespass and nuisance claims because she has no ownership interest in the disputed driveway. He asserts that her negligence claim fails because he did not owe Rivera a duty of care and, in any event, he neither breached any such duty nor caused her injuries. Lastly, he argues that he is entitled to prevail on Rivera's FHA claim because she cannot prove that he coerced, intimidated, threatened, or interfered with Rivera's use of her property because of her race or national origin. I address each argument in turn.

**A.    Trespass**

Rivera alleges that Ducharme committed a trespass when he parked his VersaHandler machine partially on her property. Ducharme argues that her trespass claim fails because she cannot prove that she has an ownership interest in the disputed driveway.

A trespass is "an intentional invasion of the property of another." Moulton v. Groveton Papers Co., 112 N.H. 50, 54 (1972). Drawing on the Restatement (Second) of Torts, New Hampshire imposes trespass liability when a person "intentionally . . . enters land in the possession of the other," regardless of whether the entry causes harm to the property. Case v. St. Mary's Bank, 164 N.H. 649, 658 (2013) (quoting Restatement (Second) of Torts § 158 (1965)).

1. <u>Ownership</u>

Rivera's trespass claim falters right out of the gate because she has presented no evidence that she has an ownership interest in the land where Ducharme parked his VersaHandler. At best, she tries to call into question Ducharme's expert's opinion expressed in his affidavit that Ducharme owns the disputed driveway. But she must do more to support her trespass claim than direct the court's attention to potential credibility issues with Ducharme's evidence. "Essentially, Rule 56[] mandates the entry of summary judgment 'against a party who fails to make a showing sufficient to establish

9

the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Coll v. PB Diagnostic Sys., Inc., 50 F.3d 1115, 1121 (1st Cir. 1995) (quoting Celotex, 477 U.S. at 322). Simply put, Rivera must produce enough evidence in responding to Ducharme's motion to permit a jury to find that Ducharme trespassed on her property. See Senra v. Town of Smithfield, 715 F.3d 34, 42–43 (1st Cir. 2013) (affirming summary judgment in favor of defendant where plaintiff put forward no evidence to support his claim and stating "a plaintiff who aspires to ward off . . . summary judgment must produce enough proof to enable her case to get to a jury") (quoting Rogan v. City of Boston, 267 F.3d 24, 27 (1st Cir. 2001)). Because Rivera has failed to satisfy this requirement, Ducharme is entitled to summary judgment on Rivera's trespass claim.

    2. Easement by implication

    Rivera argues in the alternative that she can sue for trespass because she has an easement by implication to park on the driveway. "[I]f the easement owner can demonstrate that the trespasser is interfering with the easement owner's use of the easement, the easement owner generally can maintain an action to enjoin the trespasser from further interference." Carlson v. Latvian Lutheran Exile Church of Bos. & Vicinity Patrons, Inc., 170 N.H. 299, 304, 171 A.3d 1227, 1232 (2017), as modified on denial of reconsideration (Oct. 20, 2017). This argument is a nonstarter, however,

because Rivera has not presented sufficient evidence to permit a reasonable jury to conclude that she has a parking easement.

An easement is a nonpossessory interest in land that can be granted through a written conveyance, prescription, or implication. Soukup v. Brooks, 159 N.H. 9, 13 (2009). "An easement by implication is presumed to exist if, during unity of title the owner imposes an apparently permanent and obvious servitude on one tenement in favor of another, which at the time of severance of title is in use and is reasonably necessary for the fair enjoyment of the tenement to which such use is beneficial." Choquette v. Roy, 167 N.H. 507, 513 (2015) (cleaned up). Because it is an implied grant, the existence of this type of easement turns on the circumstances during common ownership and at the time of severance. Id.

"[A]n easement by implication will not be found merely because it would be convenient to have the grant." Blaisdell v. Raab, 132 N.H. 711, 716 (1990). Instead, "[a]n easement by implication arises only because the parties so agreed." Id. at 717. "The question is whether the parties could reasonably have thought that the right was not granted." Favart v. Ouellette, 173 N.H. 304, 308 (2020) (emphasis added). "Subsequent use of the land by the severing parties may reflect the reasonable expectations as to how the land would be used following severance." Id.

There is no persuasive evidence in the record that Tumpney intended to reserve a parking easement for the benefit of the Rivera property while he owned both lots. Although he allowed his tenants to park along the side of the building while he owned both lots, nothing in the record suggests that Tumpney knew the precise location of the boundary line between the two lots or that the parking area was on the other lot.

After Tumpney sold the adjoining lot to Ducharme, Ducharme provided him with a survey showing that the parking area was on Ducharme's property and that the stairwell on Tumpney's building also encroached on Ducharme's property. Tumpney then agreed to dismantle the encroaching stairwell and provide additional services to Ducharme in exchange for his agreement to allow Tumpney's tenants to park on his property. Neither action is consistent with an intent by Tumpney to reserve a parking easement while he owned both lots.

The listing sheet for the Rivera property, which stated that the only available parking was on the street, further reflects Tumpney's belief at the time of severance that no such easement had been granted. Consistent with these facts, both Tumpney and Ducharme have submitted affidavits stating that neither party intended to reserve an easement for parking. This evidence, whether considered independently or in combination, precludes a

finding that Tumpney created an easement by implication for the Rivera property. [4]

    3. Easement by necessity

To the extent that Rivera claims an easement by necessity, there is no evidence that the claimed driveway easement is reasonably necessary to permit Rivera to use her property. "Reasonable necessity usually means that alternative access . . . cannot be obtained without a substantial expenditure of money or labor." Restatement (Third) of Property: Servitudes § 2.12 cmt. e (2000). Rivera has failed to show that the property is unmarketable without off-street parking or that it would be unduly expensive to construct parking in front of the residence. See id. § 2.12 cmt. e, illus. 7 (asserting by way of example that the use of a driveway is not reasonably necessary where there exists "no physical impediment to building" an alternative access to the street). Accordingly, Rivera cannot sustain her trespass claim by arguing that she has an implied easement to park on Ducharme's property.

**B.   Nuisance**

Rivera contends that Ducharme created a nuisance by parking his construction equipment alongside the disputed driveway in violation of a city

---

[4]    Given this evidence, Rivera's statements that the realtor and Tumpney told her that the listing sheet was wrong might support claims against Tumpney and the realtor, but these statements cannot sustain Rivera's claim that she had an implied parking easement on Ducharme's property.

ordinance. Ducharme argues in response that Rivera cannot prove that his decision to park the VersaHandler next to the disputed driveway improperly interfered with Rivera's use of her property. I agree with Ducharme.

"A private nuisance exists when an activity substantially and unreasonably interferes with the use and enjoyment of another's property." Cook v. Sullivan, 149 N.H. 774, 780 (2003) (quoting Dunlop v. Daigle, 122 N.H. 295, 298 (1982)). "Essential to a finding of either a public or a private nuisance is a determination that the interference complained of is substantial." Robie v. Lillis, 112 N.H. 492, 495 (1972). "In general, conduct will be unreasonable only when its utility to the actor and to the public is outweighed by the gravity of the harm that results." Id. at 496 (cleaned up).

Because Rivera has not shown that she has an ownership interest in the disputed driveway, her claim boils down to a contention that Ducharme created a nuisance by parking a construction vehicle on his own land. Even if Ducharme violated a city ordinance in doing so, which is disputed, no reasonable jury could conclude based on the evidence in the record that his action substantially and unreasonably interfered with Rivera's enjoyment of her property. The only interference that Rivera cites is interference with her ability to park on the disputed driveway. Because she has no right to park there, the parked VersaHandler did not unreasonably interfere with her use and enjoyment of her property.

14

**C.     Negligence**

To sustain her negligence claim, Rivera must demonstrate that: (1) defendants owed her a duty of reasonable care; (2) defendants breached their duty, and (3) defendants' tortious conduct proximately cause her injuries. Estate of Joshua T. v. State, 150 N.H. 405, 407 (2003). Proximate cause includes both cause-in-fact and legal cause. Id. Cause-in-fact requires but-for causation. Id. See also Carignan v. N.H. Int'l Speedway, Inc., 151 N.H. 409, 414 (2004). "[L]egal cause requires a plaintiff to establish that the negligent conduct was a substantial factor in bringing about the harm." Estate of Joshua T., 150 N.H. at 407. Ducharme argues that Rivera's negligence claim is deficient on all three elements.

1.     Duty

Ducharme first argues that he did not owe a duty of reasonable care to Rivera either because she was a mere trespasser on his property or because he could not reasonably foresee that she would try to park her car in the narrow space between her building and the VersaHandler. Neither argument is persuasive.

Contrary to Ducharme's suggestion, Rivera's status as a trespasser is not dispositive. In Ouellette v. Blanchard, the New Hampshire Supreme Court rejected the common law rule that landowners owe no duty to trespassers and instead explained that a single standard of reasonable care is

15

owed to all entrants to land—whether they are trespassers or invitees. 116 N.H. 552, 557 (1976). In determining whether this standard has been breached, a court must take account of all relevant circumstances. Id. Thus, Ducharme cannot escape liability for negligence merely by claiming that Rivera was a trespasser on his property when she was injured.

Ducharme's foreseeability argument fairs no better. It is an accepted principle of law in New Hampshire that a landowner owes no duty to a trespasser whose intrusion onto the property is not foreseeable. Id. Rivera, however, made no secret of her plan to continue to park on the disputed driveway. She paved it even though Ducharme told her that she had no right to park there and she continued to use the driveway over Ducharme's objections. Given these circumstances, it was reasonably foreseeable to Ducharme that Rivera might attempt to squeeze her vehicle into the narrow space between the VersaHandler and her house.[5]

---

[5]     To the extent Rivera also advances a theory of negligence per se, her argument is meritless. "The doctrine of negligence per se . . . provides that where a cause of action . . . exist[s] at common law, the standard of conduct to which a defendant will be held may be defined as that required by statute, rather than the usual reasonable person standard." Town of Londonderry v. Mesiti Dev., Inc., 168 N.H. 377, 384 (2015) (cleaned up). For the doctrine to apply, the plaintiff must be a member of the class the statute intended to protect, and the plaintiff's injury must be "of the type which the statute intended to protect against." Id. (cleaned up). Rivera argues that Ducharme violated a city land use ordinance that prohibits the storage of construction equipment within their residential neighborhood. See Doc. 32-2. Assuming

2.   Causation

Ducharme argues that he could not have caused her injury because she was injured before she came into contact with the VersaHandler. This argument is without merit. As Rivera points out, the fact that her contact with the VersaHandler did not occur until after she twisted her knee does not mean that Ducharme's actions could not be a "but-for" cause of her injury. See, e.g., Bohan v. Ritzo, 141 N.H. 210, 213-14 (1996) (finding a causal connection when a biker fell after being frightened by an approaching dog); Hoebee v. Howe, 98 N.H. 168, 172-73 (1953) (finding a causal connection where a plaintiff was injured after his horse was frightened by a low-flying aircraft). A reasonable jury could find that Ducharme's decision to park the VersaHandler immediately next to the paved strip of the driveway was both a but-for cause and a substantial contributing factor to Rivera's injury because it left her with insufficient space to gain full access to her vehicle. The fact that Rivera was injured before she came into contact with the VersaHandler does not undermine Rivera's claim that Ducharme caused her injury.

---

that she has proffered sufficient evidence from which a jury could find a violation of the ordinance, Rivera's argument nonetheless fails. She does not cite any language in the ordinance that suggests the purpose of this provision is to protect against the type of personal injury at issue in this case. On the contrary, read holistically, the purpose of the provision appears to be protecting the character of a residential neighborhood.

Ducharme also argues that he cannot be held liable for Rivera's injury because Rivera was comparatively more at fault. New Hampshire's comparative fault statute states that "contributory fault shall not bar recovery in an action by any plaintiff . . . if such fault was not greater than the fault of the defendant . . ., but the damages awarded shall be diminished in proportion to the amount of fault attributed to the plaintiff by a general verdict." N.H. Rev. Stat. Ann. §507:7-d (1986). Although Ducharme is correct that a plaintiff who is more at fault than the defendant is barred from recovering damages, a determination of comparative fault is quintessentially a jury question. See DeBenedetto v. CLD Consulting Eng'rs, Inc., 153 N.H. 793, 801 (2006). Additionally, "the burden of proof as to the existence or amount of fault attributable to a party shall rest upon the party making such allegation." N.H. Rev. Stat. Ann §507:7-d. Ducharme is not entitled to summary judgment based on Rivera's comparative fault because he has not produced sufficient evidence to entitle him to judgment on this basis as a matter of law.

In sum, none of Ducharme's arguments regarding duty, breach, or causation are sufficient grounds upon which the court can grant summary judgment. Although Rivera's negligence claim is admittedly weak, there remain triable issues of fact for a jury to resolve. Accordingly, Ducharme's motion for summary judgment on Rivera's negligence claim is denied.

18

**D.     FHA Claim**

Section 3617 of the FHA makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of having exercised or enjoyed . . . any right granted or protected by section 3603, 3604, 3606 of this title." 42 U.S.C. § 3617. "A § 3617 discrimination claim is comprised of four elements: (1) the plaintiff is a protected individual under the FHA, (2) [she was] engaged in the exercise or enjoyment of their Fair Housing rights, (3) the defendants coerced, threatened, intimidated, or interfered with the plaintiff on account their protected activity under the FHA, and (4) the defendants were motivated by an intent to discriminate." Watters v. Homeowners' Ass'n at Pres. at Bridgewater, 48 F.4th 779, 785 (7th Cir. 2022) (cleaned up). Ducharme does not challenge the first two elements of Rivera's claim. Instead, he argues that he is entitled to summary judgment because Rivera cannot prove the third and fourth elements.

Ducharme first argues that his alleged conduct is not of "sufficient magnitude" to support a finding that he intimidated, coerced, threatened, or interfered with Rivera's enjoyment of her property. Doc. 25-1 at 13. The problem with this argument is that Ducharme has failed to address the FHA's implementing regulations, which recognize a claim under § 3617 may be based on proof that a defendant engaged in "hostile environment

harassment" because of the plaintiff's protected status. 24 C.F.R. § 100.600(a). Hostile environment harassment is defined in relevant part as "unwelcome conduct that is sufficiently severe or pervasive as to interfere with . . . use or enjoyment of a dwelling." 24 C.F.R. § 100.600(a)(2). "A single incident of harassment because of [protected status] may constitute a discriminatory housing practice, where the incident is sufficiently severe to create a hostile environment." 24 C.F.R. § 100.600(c).

Rivera's § 3617 claim is premised on the theory that Ducharme interfered with her enjoyment of her dwelling by harassing her because of her race and national origin. Rivera principally relies upon Ducharme's use of the slur "spic" to refer to Rivera and her children, once in Rivera's presence and multiple times in front of her adult sons. She also cites his intentional plowing of snow onto her vehicle. Construed in the light most favorable to Rivera, this evidence could support a finding that Ducharme engaged in severe or pervasive harassment that interfered with Rivera's enjoyment of her dwelling and that he did so at least in part because of her race and national origin. As other courts have found in the Title VII context, "unambiguously ethnic slurs like 'spic' . . . surely fall on the more severe end of the spectrum of comments." Ortiz v. Sch. Bd. of Broward Cnty., Fla., 780 F. App'x 780, 785 (11th Cir. 2019); see also Cerros v. Steel Techs., Inc., 398 F.3d 944, 950-51 (7th Cir. 2005) (stating that it was "difficult to imagine epithets

more offensive to someone of Hispanic descent" than "spic" and "wetback").

Whether Ducharme's alleged harassment is sufficiently severe or pervasive to violate § 3617 is thus a question for the jury.

Ducharme's argument that Rivera cannot prove that he harassed her because of her race or national origin is also a nonstarter. Rivera has produced direct evidence in response to Ducharme's motion that he used racial slurs when harassing her and her sons. Direct evidence of discriminatory animus is ordinarily sufficient to give rise to a jury question as to his motivation.[6] See Chamberlin v. 101 Realty, Inc., 915 F.2d 777, 782 (1st Cir. 1990); Williams v. CSX Transp. Co., Inc., 643 F.3d 502, 511 (6th Cir. 2011). Thus, Rivera's § 3617 claim must be resolved by a jury.

## IV.   CONCLUSION

For the foregoing reasons, the Ducharme's motion for summary judgment (Doc. 25) is denied as to Rivera's FHA claim (Count I) and her

---

[6]     Ducharme hints at but does not develop an argument that Rivera's § 3617 claim is defective because his conduct was prompted by Rivera's trespass on his property rather than her use of her own property. I decline to address this argument because it has not been properly briefed. See Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 260 (1st Cir. 1999) ("The district court is free to disregard arguments that are not adequately developed."); accord Coons v. Indus. Knife Co., Inc., 620 F.3d 38, 44 (1st Cir. 2010.

negligence claim (Count II). The motion is granted as to the remaining claims.

      SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

August 15, 2023

cc:    Counsel of record